IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| RENEWALMD, PC, <br><br> Plaintiff, <br><br> v. <br><br> JOEL SHANKLIN, MD, <br><br> Defendant. | CIVIL ACTION NO.: 4:21-cv-184 |

**O R D E R**

This matter comes before the Court on Plaintiff's Motion for Default Judgment. (Doc. 12.) For the reasons set forth below, the Court **DENIES** Plaintiff's Motion. (Id.)

**BACKGROUND**

Plaintiff RenewalMD, PC, (hereinafter "Renewal") filed this action against Defendant Joel Shanklin, MD, (hereinafter "Shanklin") on June 18, 2021. (Doc. 1.) Renewal alleges that Shanklin has breached a contract by failing to pay amounts due and owing on the contract. (Id. at p. 4.) According to the Complaint, Shanklin is a physician and a former shareholder in Renewal. (Id. at p. 2.) Sometime before July 31, 2019, another physician associated with Renewal (Dr. Curtsinger) disassociated with the practice and, as part of his disassociation and a subsequent dispute about that disassociation, the three remaining partners in Renewal (which included Shanklin) agreed to pay Curtsinger a sum certain as a settlement. (Id. at pp. 2–3.) A settlement agreement was drafted, memorializing the amount to be paid to Curtsinger (hereinafter the "Settlement Agreement"), and

Shanklin agreed to and signed the Settlement Agreement.[1] (Id. at p. 3.) On July 31, 2019, Shanklin also disassociated with Renewal and sold his interest in Renewal to a remaining partner, Dr. Meghan McGovern, as part of a stock transfer agreement (hereinafter the "Stock Transfer Agreement"). (Id.) According to the Complaint, as part of the Stock Transfer Agreement, Shanklin agreed to pay his share of liability for the Curtsinger settlement, as well as his pro rata share of the attorneys' fees incurred in negotiating and finalizing that settlement, although the Complaint—notably—does not allege any specific person or entity to whom Shanklin agreed to make this payment. (Id.) According to the Complaint, the Stock Transfer Agreement allowed this "debt" to be called at any time. (Id.) Renewal alleges that it demanded that Shanklin pay this amount and called the debt in writing no later than February 26, 2020, but Shanklin has not paid the total of $93,062.51 that Renewal claims is due and owing. (Id.)

In Count I of its Complaint, Renewal asserts a claim for breach of contract against Shanklin, based on his failure to pay the indebtedness memorialized in the Stock Transfer Agreement, which Renewal claims entitles it to recover the "unpaid principal amount under the contract, $93,062.51." (Id. at pp. 3–4.) In Count II, Renewal seeks to additionally recover prejudgment interest pursuant to O.C.G.A. § 7-2-4 for the simple interest accrued (at the statutory rate of 7% per annum) since the demand for payment was made to Shanklin on or before February

---

[1] Renewal initially attached a redacted copy of the Settlement Agreement as Exhibit 1 to the Complaint, (see docs. 1-1, 1-5), and later, with leave of Court, also filed an unredacted version under seal, (doc. 1-5). Renewal filed an unredacted copy of the Stock Transfer Agreement as Exhibit 2 to the Complaint. (See doc. 1-2.) Renewal did not request that access to this exhibit be restricted; however, due to what appears to have been an inadvertent error on the part of the Clerk of Court, access to that exhibit (which, the Court notes, was mislabeled on the docket as an additional copy of the Settlement Agreement) was restricted to Courts users only. Because Renewal has not requested that access to the Settlement Agreement be restricted (and the Court's review of the document reveals no basis for such), the Court **DIRECTS** that the Clerk of Court to adjust the docketing of doc. 1-2 so that access to it is **UNRESTRICTED**.

26, 2020.  (Id. at pp. 4–5.)  Finally, in Count III, Renewal seeks to recover attorneys' fees and costs under O.C.G.A. §§ 13-6-11 and 9-15-14 based on the fact that it "has expended time and effort attempting to contact Dr. Shanklin and in requesting that he pay amounts due and owing" but he has "offered no good faith excuse for his failure to pay." (Id. at p. 5.)  Renewal asserts that Shanklin's actions have been "stubborn, litigious, and have no good-faith explanation," and that, because of Shanklin's actions, Renewal has "been forced to retain [an attorney] to attempt to pursue the amount due and owing, including by initiating and prosecuting this lawsuit." (Id. at pp. 5–6.)  The Complaint was verified by McGovern.[2]  (Doc. 1-3.)

Shanklin was personally served with a summons and the Complaint on July 20, 2021.  (Doc. 9.)  However, Shanklin never filed an answer and has failed to otherwise appear in this action.  Consequently, Renewal moved for a clerk's entry of default, (doc. 10), and the Clerk of Court granted that request, (doc. 11).  Renewal has since filed a Motion for Default Judgment, which is now ripe for review.  (Doc. 12.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 establishes a two-step procedure for a party to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Second, after receiving the clerk's default, the court can enter a default judgment provided the defendant is not an infant or incompetent.  Fed. R. Civ. P. 55(b)(2).  However, the clerk's entry of default does not automatically warrant entry of default judgment.  "[T]hree distinct matters emerge as essential in

---

[2]  According to the Complaint, McGovern "is now the sole member" of Renewal.  (Doc. 1, p. 2.)

considering any default judgment: (1) jurisdiction; (2) liability; and (3) damages.  Before the Court can grant plaintiff's motion for default judgment, all three must be established." Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004).  Thus, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Tyco Fire & Sec., LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007); see also Eagle Hosp. Physicians v. SRG Consulting, 561 F.3d 1298, 1307 (11th Cir. 2009).  In assessing liability, the Court must employ the same standard as when addressing a Rule 12(b)(6) motion to dismiss for failure to state a claim. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) ("Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim.").

Once the Court determines that default judgment should be entered, it then turns to the question of the type and amount of damages. Pitts, 321 F. Supp. 2d at 1356.  Even where the Court finds that default judgment is appropriate, it must make certain "that there is a legitimate basis for any damage award it enters[.]" Anheuser-Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003); see also Faria v. Lima Inv. Sols. LLC, No. 6:19-CV-535-ORL-37GJK, 2019 WL 3044033, at *2 (M.D. Fla. June 24, 2019), report and recommendation adopted, No. 6:19-CV-535-ORL-37GJK, 2019 WL 3037796 (M.D. Fla. July 11, 2019) ("Unlike well-pleaded allegations of fact, allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages.").  Further, as the Eleventh Circuit Court of Appeals explained, "despite Rule 55's permissive language, judgment of default awarding

cash damages [cannot] properly be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." Organizacion Miss Am. Latina, Inc. v. Urquidi, 712 F. App'x 945, 948 (11th Cir. 2017) (internal quotations omitted).

**DISCUSSION**

**I.     Jurisdiction**

According to the Complaint, the Court "has general and/or specific personal jurisdiction over Shanklin because Shanklin conducted business in Georgia for many years while residing in the state, entered [into] the subject contract in Georgia, the subject contract was to be performed in Georgia, and Shanklin's breach directly affected a Georgia entity." (Doc. 1, p. 2.) As for subject matter jurisdiction, the Complaint alleges that Shanklin is a citizen and resident of Ohio and Renewal is a Georgia professional corporation with a principal place of business in Georgia; additionally, Renewal's sole member is Dr. McGovern, who is a Georgia citizen and resident. Accordingly, the Complaint establishes diversity of citizenship. As Renewal asserts that it is entitled to more than $75,000 as a result of the breach of contract ($93,062.51, to be exact), the amount in controversy requirement appears to be satisfied. Thus, the Complaint indicates that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

**II.    Liability**

In order for Renewal to recover any of the requested types of relief in this case, the well-pleaded allegations of the Complaint must establish that Shanklin is liable to Renewal for breach of the at-issue contract. The elements of a breach of contract claim in Georgia[3] are "(1) a valid

---

[3] Because this Court is sitting in diversity, it applies the choice-of-law rules of the forum state (i.e., Georgia). See Nat'l Fire Ins. Co. of Hartford v. Thrasher Contracting, 142 F. Supp. 3d 1309, 1312 n.1 (N.D. Ga. 2015). In the context of contracts, Georgia follows the *lex loci contractus* doctrine. See id. This case involves contracts executed in Georgia that concerned a corporation and individuals operating out of

contract; (2) material breach of its terms; and (3) damages arising therefrom." Brooks v. Branch Banking & Tr. Co., 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015).

As described in the Background Section, supra, Renewal specifically asserts that Shanklin is liable for breaching an agreement he made in the Stock Transfer Agreement "to pay his share of liability for the Curtsinger settlement, as well as to pay his pro rata share of the attorneys' fees incurred in negotiating and finalizing that settlement." (Doc. 1, p. 3.) While the Court is generally expected to accept all well-pleaded allegations as true, here, a number of the allegations are inconsistent with the documents that Renewal attached to the Complaint. "In such cases, the facts contained in the attached documents control." Lubin v. Lubin N. Am., Inc., No. 1:13-CV-2696-AT, 2014 WL 11930615, at *1 (N.D. Ga. Oct. 3, 2014); see also Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206-1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir. 2009) ("It is the law in this Circuit that when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.") (internal citations and quotation marks omitted).

The Stock Transfer Agreement and the Settlement Agreement include material provisions and details that Renewal, at best, has failed to explain in the Complaint and the Motion for Default Judgment. First and foremost, according to its own explicit terms, the July 31, 2019, Stock Transfer Agreement was "between . . . Shanklin . . . and . . . McGovern." (Doc. 1-2, p. 1.) In

---

Georgia, and the contracts themselves state that the law of Georgia shall be the governing law in applying and interpreting them. (Doc. 1-2, p. 3; doc. 1-5, p. 11.) Accordingly, the Court applies Georgia law. See Thrasher Contracting, 142 F. Supp. 3d at 1312 n.1 (applying Georgia law where it "appears all of the contracts in this case were both formed and performed—or at least *intended* to be performed—in Georgia") (emphasis in original).

Paragraph 6 the Stock Transfer Agreement, Shanklin agreed that, although he was transferring his shares of common stock in Renewal to McGovern, he would retain liability for "obligations relating to claims made by Dr. Luke Curtsinger against [Renewal] (the 'Curtsinger Matter'), as if [Shanklin] still owned [his] Shares and as if [he] retained his status as a shareholder in [Renewal]." (Id. at p. 2 (underlining in original).)  Shanklin also "agree[d] to indemnify [Renewal] and its shareholders against, or otherwise contribute [his] portion . . . of . . . [any obligation in the case of the Curtsinger Matter, which portion would be] one-third . . . ."  (Id.)

Less than a year later, a settlement was reached in the "Curtsinger Matter."  Pursuant to the Settlement Agreement, which the Court has also reviewed, "a total payment amounting to" ███████ was to be paid to Curtsinger by ████████████████████████████████ ████████████████████████████████████.[4]  (Doc. 1-5, pp. 1, 6.)

In the Complaint, Renewal says that Shanklin's "agreement to pay his share of liability for the Curtsinger settlement, as well as to pay his pro rata share of the attorneys' fees incurred in negotiating and finalizing that settlement" constituted a "debt" that was "allowed . . . to be called at any time," and that, by February 26, 2020, Renewal had called the debt in writing and demanded that Shanklin pay it "the total amount due and owing, which totals $93,062.51."  (Doc. 1, p. 3.)  The Complaint, however, does not cite to any specific portion of the Stock Transfer Agreement showing that Shanklin's agreement to pay his share of the settlement with Curtsinger and the

---

[4] The Settlement Agreement has been sealed by prior Order of the Court based on the fact that it contains a confidentiality agreement.  (Doc. 7.)  The Court must recount some of the information contained within the Settlement Agreement in order to rule on the Motion for Default Judgment.  To balance the need for the agreed-upon confidentiality and the public's right to access, the Court has prepared a version of this Order which redacts any information the Court deems warrants protection from public view. The version of this Order with those redactions will be filed on the public docket, and an unredacted version of this Order will be filed in a restricted manner, with access thereto restricted to only the Court and the parties.

7

attorneys' fees related thereto constituted a debt owed under that contract—much less one that was owed to *Renewal* (which was not a party to the Stock Transfer Agreement)—nor does the Complaint cite to any part of the Stock Transfer Agreement providing that this supposed debt was "allowed to be called at any time," and no such provisions are readily apparent from a review of the Stock Transfer Agreement.[5] Furthermore, the Complaint does not allege whether—much less how, or by whom, or when—any or all of the $▮▮▮▮▮▮ settlement was paid to Curtsinger, and thus it is not apparent whether or why a debt would be owed under the Stock Transfer Agreement by Shanklin, particularly to *Renewal*, which was not a party to the Stock Transfer Agreement.[6] Put another way, the Complaint does not allege that Renewal actually paid Shanklin's share of the attorneys' fees incurred in negotiating the settlement (and, even if it has done so, it's not clear that Renewal would have standing to seek reimbursement pursuant to the Stock Transfer Agreement). Because the allegations in the Complaint appear to be materially inconsistent with the at-issue contracts, the Court cannot conclude that the allegations are well-pled so as to support the entry of a default judgment on Renewal's substantive claim for breach of contract.  See, e.g., Bank of New

---

[5] Similarly, in its Motion for Default Judgment, Renewal asserts that the Complaint establishes that Shanklin "entered into a Stock Transfer Agreement with Plaintiff [Renewal] and part of that Agreement required Defendant [Shanklin] to repay his share of liability for Dr. Curtsinger's settlement." (Doc. 12, pp. 4–5.)  In support, the Motion cites Paragraph 10 of the Complaint, but that paragraph only asserts that Shanklin agreed, in the Stock Transfer Agreement to pay his share of the settlement and his share of the related attorneys' fees; neither the Complaint nor the Stock Transfer Agreement itself explicitly indicate that, in the Stock Transfer Agreement, Shanklin agreed to pay Renewal the amount constituting his share of the settlement and attorneys' fees.

[6] Generally, "a person who is not a party to a contract, or an intended third-party beneficiary of a contract, lacks standing to challenge or enforce a contract under Georgia law." Haynes v. McCalla Raymer, LLC, 793 F.3d 1246, 1251 (11th Cir. 2015); see also Haldi v. Piedmont Nephrology Assocs., P.C., 283 Ga. App. 321, 641 S.E.2d 298, 300 (Ga. Ct. App. 2007) (the plaintiff did not have standing to challenge the contract because he was neither a party to the contract nor an intended beneficiary of it).  While there may be some legal basis entitling Renewal to sue for breach of the Stock Transfer Agreement, it is incumbent on the *Plaintiff* to assert such legal theories; it is certainly not the Court's job to fill in the missing pieces so that Plaintiff can meet the well-pleaded complaint requirement.

8

York Mellon, Tr. to JPMorgan Chase Bank, N.A. v. Morandini, No. 17-CV-22595-KMW, 2018 WL 11317007, at *1 (S.D. Fla. Mar. 16, 2018) (denying motion for default judgment without prejudice because "[p]laintiffs' threadbare allegations that the defendant borrower 'breached [the] Note and Mortgage . . . [by] failing to make loan payments and/or not fulfilling other obligations on them,' [were], without more, insufficient to demonstrate their entitlement to the relief requested" and "[p]laintiffs fail[ed] to provide any specific information regarding when the borrower defaulted, how she defaulted, or even which provisions of the note and mortgage she breached"); Suntrust Bank v. Robida, No. 6:09CV1404ORL28DAB, 2009 WL 3818194, at *2 (M.D. Fla. Nov. 16, 2009) (denying motion for default judgment without prejudice because, "[i]n view of the conflicting and vague assertions and skimpy proof here, the Court cannot [conclude] that a default judgment be entered on this record").

**III.  Damages**

Even if Renewal were entitled to a default judgment on the issue of liability, further proof is necessary regarding damages. As explained below, the total amount of damages to which Renewal claims it is entitled is, at least on the present record, neither "a liquidated sum or one capable of mathematical calculation." Organizacion Miss Am. Latina, Inc., 712 F. App'x at 948.

In the Complaint, Renewal baldly asserts that Shanklin owes it $93,062.51 pursuant to the Stock Transfer Agreement, (doc. 1, p. 3), and, in the Motion for Default Judgment, its only support for the figure is the claim that "[t]his amount was verified when the Complaint was filed," (doc. 12, p. 5). This cannot be considered a "liquidated sum," as the Stock Transfer Agreement does not list this figure as an amount Shanklin is obligated to pay.[7] See Griffin v. Jernigan, No. 2:19-

---

[7] For instance, this is not a case involving a promissory note that clearly and explicitly lists the amount of principal debt owed. (On that note, however, the Court notes that, confusingly, in its Motion for Default

cv-132, 2022 WL 1151281, at *1 n.1 (S.D. Ga. March 24, 2022) ("Griffin contends that the claims asserted here are for a 'sum certain,' but he misunderstands that phrase. 'The certainty requirement is not met . . . when there is only a generalized statement of the amount due in [the] plaintiff's complaint'—i.e., '[a p]laintiff cannot satisfy the certainty requirement simply by requesting a specific amount.'") (quoting 10A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2683 (4th Ed. Apr. 2021 Update)).  And to the extent Renewal may claim that this is a sum "capable of mathematical calculation," based on the fact that the Stock Transfer Agreement states that Shanklin is responsible for one-third of the settlement amount, that theory fails as well.  One third of $█████████ is only $█████████, which leaves $█████████ of the alleged total debt unaccounted for.  Nothing in the Complaint or the record provides a basis for calculating Shanklin's "pro rata" share of the undisclosed amount of attorneys' fees incurred for negotiating the settlement, and the Court cannot, in this context, simply assume that there is a way to mathematically calculate Shanklin's share of the attorneys' fees to be $█████████.[8]  See Anheuser Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters . . . .").

## CONCLUSION

Plaintiff's Motion for Default Judgment, (doc. 12), is **DENIED WITHOUT PREJUDICE**.  Plaintiff shall have until June 6, 2022, to file a renewed motion for default judgment.  Failure to file a renewed motion by that date may result in dismissal of this case.  Any

---

Judgment, Renewal asserts that it is entitled to a default judgment "reflecting *the Note's* principal amount," (doc. 12, p. 5), despite the fact that, by all other accounts in the record, Renewal does not appear to contend that the Stock Transfer Agreement is a promissory note.)

[8]  Neither the Motion for Default Judgment nor the affidavit provided by Renewal's attorney provide any details on how the $93,062.51 sum was mathematically calculated.  (See docs. 12, 12-1.)

renewed motion must sufficiently address the issues raised in this Order. The Court **DIRECTS** the Clerk of Court to file the redacted version of this Order on the docket for public access and file separately the unredacted version of this Order as a restricted document, so that only the Court and the parties may have access to the unredacted version. The Court **DIRECTS** the Clerk of Court to adjust the docketing of doc. 1-2 so that access to it is **UNRESTRICTED**.

**SO ORDERED**, this 20th day of May, 2022.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA